MAYOR ET AL. *VS.* HOPKINS ET AL.

APPEAL FROM THE COURT OF THE FIRST JUDICIAL DISTRICT, JUDGE
BUCHANAN PRESIDING.

The sale of a part of the open space or *quai*, in front of Old Levee-street, in New-Orleans, was sold as *public* property, and has been lawfully alienated by the sovereign authority; for the disposition of the proceeds of the sale, in being made part of the sinking fund of the city, by an act of the legislature, is equivalent to an original authority on the part of the state to make the alienation.

The public space or *quai*, in front of Old Levee-street, and between it and the river, in the city of New-Orleans, is, by the plan of the city, appropriated to the use of the public, and having been ever occupied as such, is a *public place, hors de commerce*, and cannot be claimed by an individual in a civil action.

The destination of this space as a *public place*, was made by the sovereign power, and the right to alienate or to make a change in it, whenever the public interest requires it to be done, is vested in the sovereign power, and to this the rights of front proprietors are subordinate.

This is an action against the maker and endorser of two promissory notes, given as part of the price of a lot of ground, comprised in the vacant space or square between Custom-house and Bienville streets, and in front of Old Levee-street, in the city of New-Orleans. When these notes became due, they were protested for non-payment, and the present plain-

tiffs, the Mayor, Aldermen and inhabitants of the city of New-Orleans, instituted suit to recover the amount thereof, for the benefit of the sinking fund, in pursuance of an act of the legislature, passed the 8th March, 1836, dividing the city into three municipalities.

The defendants admitted their signatures, and pleaded various matters in defence; but Hopkins, the maker of the notes, averred that he was already the owner of a lot on Old Levee-street, fronting the *river Mississippi*, according to the original titles, and that all the space in front of his lot, (and which has been sold,) was designated on the original plan of the city as public property, and marked *as a quai*; in consideration of which, he avers, he is entitled to enjoy all the rights, advantages and privileges of such a situation.

He alleges that the sale of this front space in lots, is illegal; that by it he has been deprived of the privilege of a front proprietor, and that it belonged to the public as *a quai*, so long as the city should claim it for this purpose. He further avers, that the corporation had no right to consent to the sale of said space of land; that it had no title, other than the right to keep the same open as a *quai*, and to regulate the use of it for the benefit of the public. He prays that said notes be cancelled, and that they, together with others he gave, be returned to him, and that he have judgment for damages occasioned him, in being deprived and cut off from his privileges as a front proprietor. Upon this issue the case was tried by the court.

The evidence shows that the space of ground, lying between Old Levee-street and the public road or street, running along the Levee, at the upper and lower extremities of the *city proper*, and which was originally designated on the plan as *a quai*, had become enlarged by alluvion, or batture, in front, and it was deemed necessary to sell off a portion of it into lots. At this time, (1834,) the space in question was in contestation between the United States and the Corporation of New-Orleans. While suit was still pending, and before the decision of the Supreme Court of the United States, giving this property to the Corporation, an agreement

was entered into between the parties litigant, that the ground in contest be laid out into lots, and sold at public auction, and the proceeds of sale held subject to the final judgment of the court.

Judgment was rendered in the Supreme Court of the United States, at the January term, 1836, in favor of the Corporation of New-Orleans. On the 11th of March, 1836, the legislature passed a law sanctioning this sale, and providing that the net proceeds *be, and form a part of the sinking fund* of the Corporation, according to the provisions of the 15th section of the act, approved the 8th March, 1836, dividing the city into municipalities.

On the whole evidence adduced, the district judge gave judgment for the plaintiffs, and the defendants appealed.

*Canon,* for the plaintiffs, urged the affirmance of the judgment. The defendants had no ground of defence, as there was no eviction or disturbance in regard to the possession or title to the property.

2. The appellants cannot set up any want of authority to sell the premises, as they have taken possession and improved the property, and have, by their acts, ratified all the proceedings in relation to the sale.

*Preston,* for the appellants.

*Eustis, J.,* delivered the opinion of the court.

This is an action against the drawer and endorsers of two promissory notes. The answer alleges, that the defendant, James Hopkins, is the owner of a certain lot of ground in the city of New-Orleans, situated on Levee-street, between Bienville and Custom-house streets, that he holds, and his vendors have always held said property, under titles describing it as fronting on the river Mississippi, that the space between his lot and the river was designated on the original plan of the city, and on all plans subsequently made, as public property, in consequence of which he, Hopkins, was a front proprietor, and entitled to have and enjoy all the rights, privileges, and advantages of such a situation ; that under a decree of the

District Court of the United States for the Eastern District of Louisiana, rendered by consent of parties in the suit of the United States against the mayor, aldermen, and inhabitants of the city of New-Orleans, the space of ground between Levee-street and the river, between the lateral streets last mentioned, including the space in front of his, the respondent's, lot, was advertised for sale at public auction ; that said decree was made without any lawful authority, and all the proceedings under it were null and void ; that the respondent entered his protest against the sale, and notwithstanding his opposition and protest, the sale took place, and to prevent third persons from purchasing the space, he purchased the lot immediately in front of his property as before described ; that the two notes sued on were given by the respondent in part payment of the lots thus purchased by him.   He pleads that the plaintiffs cannot maintain this action, because the court issuing the decree under which the property was sold was without jurisdiction, and that as the plaintiffs had no right, title, or interest in the property sold, the consideration on which the notes were given has totally failed ; he prays that the notes sued on be cancelled by the order of the court, and that the other notes given by him in payment of said lot be delivered up to him.   He also alleges, that by the said illegal conduct of the plaintiffs, in causing said public property to be sold, he has sustained damages to the amount of twenty thousand dollars, which he pleads in reconvention, and concludes with a prayer for general relief.

There was judgment for the plaintiffs, and the defendant has appealed.

The suit in which the property in front of the city was in litigation, was finally determined in the Supreme Court of the United States, in January term, 1836, and is reported in 10th Peters's Reports, 733.

By a law of this state, passed on the 11th of March, 1836, the funds arising from this sale, in the event of a decision in favor of the present plaintiffs, against the United States, were made a part of the city sinking fund, established by the 15th

section of the act dividing the city into three municipalities, passed on the 8th March, 1836.

The judge of the court below, in overruling the evidence offered by the defendants on the trial of the cause, decided on the principle, that as it appeared by the answer of the defendant, Hopkins, that he had not purchased the lot front-ing his property in error or under a mistake of his rights, he was estopped from contesting the title under which he purchased, and to which he had given his consent in an authentic act.

We doubt very much whether the doctrine of estoppel will apply in a contract of sale, between the vendor and vendee. This is a doctrine of legal policy only. Its application must necessarily depend on the circumstances of each case. 7 *Wheaton's Reports*, 535, 547. As we decide this case on other principles, there is no necessity for considering the propriety of its application in the present instance.

Taking the case of the defendant as he has stated it himself, how stands his defence to this action ?

His lot is on Levee-street ; it is held under titles describing it as fronting on the river Mississippi ; the space between his lot and the river was designated in the original plan of the city, and all subsequent plans, as *public property ;* he was a front proprietor, and entitled to all the rights, privileges and advantages of such a situation.

The sale of a part of the open space or *quai* in front of Old Levee-street, in New-Orleans, was sold as *public* property and has been lawfully alienated by the sovereign authority ; for the disposition of the proceeds of the sale in being made part of the sinking fund of the city, by an act of the legislature, is equivalent to an original authority on the part of the state to make the alienation.

How can he complain of the alienation of this space. If, as he says, it was *public property,* it has been lawfully aliena-ted by the sovereign authority ; for the disposition of the proceeds of the sale by an act of the legislature, is equivalent to an original authority on the part of the state to make the alienation. If this space could be sold lawfully whenever the sovereign power should determine that its destination should be changed, what possible right can the front propri-etors have to any indemnity from the state or those who stand in its stead. The change in this space, whenever the public interests should require it, is necessarily a condition resulting from the original destination ; and the rights and advantages of situation of the front proprietors, were neces-

sarily dependent on and subordinate to this condition. This they knew or were bound to know, when they acquired the property to which this supposed right or privilege of situation is attached. The right of the sovereign power to change the destination of this space of ground is as complete as the right of the defendant to enjoy his privileges in relation to it, until such change takes place.

The true character of this space of ground under consideration, we think has been conclusively settled in the dissenting opinion delivered by the present presiding judge of this court, in the case of Cucullu and De Armas, against the present plaintiffs, reported in 5 Louisiana Reports, 174, which was adopted as the basis of the judgment of the Supreme Court of the United States, in the suit in which the sale was made of which the defendant complains.

Judge Martin says, in his opinion, "I conclude, therefore, that the space under consideration, appearing by the plan of the city of New-Orleans to have been appropriated to the use of the public, and having been ever occupied as such, (although, in two instances, governors favored individuals with grants of part of it,) this court ought to say the *locus in quo* is part of a *public place, hors de commerce*, and cannot be claimed by an individual in a civil action." On the subject of changing the destination of public places, the opinion of the court was unanimous.

The destination of this space as *a public place*, was made by the sovereign power when Louisiana was under the dominion of the French monarchy; it was changed by the sovereign authority of the state of Louisiana. The right to make this change, whenever the interests of the public required it, is vested in the sovereign power; to this right, that of the front proprietors is necessarily subordinate.

We consider that none of the rights or privileges of the defendant have been violated by the sale of the space in front of his estate, and that there is no ground in law or equity for his withholding the price of it, and that he has no claim for damages against the plaintiffs for their acts complained of.

The public space or *quai* in front of Old Levee street, and between it and the river, in the city of New-Orleans, is by the plan of the city appropriated to the use of the public, and having been ever occupied as such, is a public place *hors de commerce*, and cannot be claimed by an individual in a civil action. The destination of this space as a public place, was made by the sovereign power, and the right to alienate or to make a change in it, whenever the public interest requires it to be done, is vested in the sovereign power, and to this the rights of front proprietors are subordinate.

We have not noticed in detail the several bills of exception taken by the counsel of the defendant to the opinion of the judge refusing to admit the evidence offered. If the evidence went to prove any other matters than those admissible in evidence under the allegations of his petition, it was properly rejected; and if all his allegations were established, there would, under the view we have taken of the case, be no defence to the action of the plaintiffs.

It is, therefore, ordered, adjudged and decreed, that the judgment of the District Court be affirmed, with costs in both courts.