PROVOSTY, J.
By Act 70, p. 102, of 1896, as amended by Act 36, p. 44, of 1900, the board of commissioners of the port of New Orleans is created and is required to take charge of and. administer the public wharves and landings of the port of New Orleans, and to “erect sheds on the wharves and landings to protect merchandise in transit, to place and keep the wharves and landings in good condition”; and the act provides that, “to defray said expenses, they shall charge upon shipping visiting the port of New Orleans, for the use of the wharves,” etc., certain rates fixed in the act. And the act goes on to say that:
“Where sheds are provided, shipping using same shall pay an additional charge. Said charge shall not exceed, in any case, the cost of construction, maintenance and management of said improvements.”
Certain bags of coffee which had been stored for plaintiff in one of the sheds so pro^ vided, having been damaged, by leakage in the roof of the shed, plaintiff sues for the loss.
The defense is that the defendant board has no fund out of which to pay such damages, and is not authorized by law to provide any; that therefore it cannot be condemned to pay same; that the charge which it is authorized to make for the storing of merchandise is restricted to the amount that may be. necessary to construct, maintain, and manage said sheds, which does not include any amount whatever for paying damages for injury to goods that may be stored under the sheds; and that the defendant does not occupy the position of an ordinary warehouseman, since it does not conduct the business for a profit, but simply for the accommodation of the commerce of the port; and finally that the defendant is a state agency not liable to be sued in damages for any acts of malfeasance or nonfeasance. >
The latter contention was sustained by the city court, and the suit was dismissed. The Court of Appeal reversed the judgment, and gave judgment for plaintiff.
In Barrett v. Board, 133 La. 1022, 63 South. 505, 50 L. R. A. (N. S.) 469, where a furnish-er of materials for the construction of one of these same freight sheds sought to hold said board responsible for not having exacted a bond of the contractor, as is required of private persons and corporations, this court held said board not liable, as being a state agency, whose property is public and not liable to seizure.
While, on the one hand, it would seem to be a great hardship for the commerce of the port to be denied all recourse for damage to goods, although forced by the exigencies of the situation (a situation created by law) to store them in these sheds, we do not, on the other hand, see upon what property or funds a levy could be made for the satisfaction of any judgment that might be rendered against said board. The wharves and sheds could not be seized; and it would seem, by parity of reasoning, that the funds authorized by law to be procured for the erection, maintenance, *787 and management of these same public facilities of commerce would in like manner be exempt from seizure.
The statute creating this board and providing for its operations would seem to contemplate that its charges should not include any margin of profit, but should be, as far as possible, the exact equivalent of the expense of furnishing the wharves and sheds for the benefit of the commerce of the port and the protection of freight.
It is to be noted that, this board not having any money of its own but only such as it collects from ships and freight using the wharves and sheds, any judgment rendered against it would have to be paid, not by it, but by the ships and freight using the wharves and sheds in the future. The board would only be the intermediary for collecting the amount of these damages from these future ships and freight.
The judgment of the Court of Appeal is therefore set aside, and that of the city court reinstated; plaintiff to pay costs of appeal and of this court.