776 So.2d 634 (2000)
Shane CLAVIER, et ux.
v.
LAY DOWN SERVICE, INC., et al.
No. 00 00701-CA.
Court of Appeal of Louisiana, Third Circuit.
December 20, 2000.
Rehearing Denied February 28, 2001.
*635 Donald G. Cave, Cave Law Firm, Baton Rouge, LA, Counsel for Plaintiff/Appellant.
Edward C. Abell Jr., Onebane, Bernard, Torian, Lafayette, LA, Counsel for Defendant/Appellee Grey Wolf Drilling Company.
Raymond M. Allen, Allen Law Office, Lafayette, LA, Counsel for Defendant/Appellee Soloco, L.L.C.
John Felton Blackwell, New Iberia, LA, Counsel for Defendant/Appellee Lay Down Service, Inc.
Henry A. King, King, LeBlanc, & Bland, New Orleans, LA, Counsel for Defendant/Appellee Union Pacific Resources, Inc.
Michael Joseph Juneau, The Juneau Firm, Lafayette, LA, Counsel for Defendant/Appellee Audubon Indemnity Company.
Shane Michael Mouton, Mouton & Adams, Rayne, LA, Counsel for Defendant/Appellee Ed Melancon.
Travis Ron LeBleu, Egan, Johnson and Stiltner, Baton Rouge, LA, Counsel for DEFENDANT/Appellee La. Workers' Compensation Corp.
Court composed of Judge BILLIE COLOMBARO WOODARD, Judge MICHAEL G. SULLIVAN, and Judge GLENN B. GREMILLION.
GREMILLION, Judge.
The plaintiffs, Shane and Jamie Clavier, appeal the judgment of the trial court granting summary judgment in favor of the defendant, Union Pacific Resources Company. The trial court held that Union Pacific was Shane's statutory employer and, thus, only liable to him for workers' compensation benefits pursuant to La.R.S. 23:1061. For the following reasons, we reverse and remand.

FACTS
On August 17, 1996, Shane, a laydown machine operator for Garber Industries, Inc., suffered a work-related injury which resulted in the amputation of his left leg below the knee. Numerous parties were named as defendants in the Claviers' suit; however, this appeal only concerns Union Pacific. It moved for summary judgment alleging that it was Shane's statutory employer *636 and, thus, only liable to him for workers' compensation benefits pursuant to La.R.S. 23:1061.
The trial court granted the summary judgment, finding that the "integral relation" test applied to determine whether Union Pacific was Shane's statutory employer. It further held that laydown services were part of Union Pacific's trade, business, or occupation; thus, it was Shane's statutory employer. After a judgment was rendered, Shane appealed to this court. However, since the trial court failed to make the required determination of finality and the parties did not expressly agree as to the finality of the judgment, as provided by La. Code Civ.P. art. 483, this court remanded the appeal so that such a determination could be made. Thereafter, judgment was rerendered on November 1, 1999, designating that it was a final judgment based upon the trial court's determination that no reason for delay existed. This appeal followed.

ISSUES
The Claviers raise two assignments of error on appeal:
1) The trial court erred in finding that Union Pacific was Shane's statutory employer.
2) The trial court erred in granting summary judgment in favor of Union Pacific.

SUMMARY JUDGMENT
On appeal, summary judgments are reviewed de novo. Magnon v. Collins, 98-2822 (La.7/7/99); 739 So.2d 191. Thus, the appellate court asks the same questions the trial court asks in determining whether summary judgment is appropriate. Id. This inquiry seeks to determine whether any genuine issues of material fact exist and whether the movant is entitled to judgment as a matter of law. La. Code Civ.P. art. 966(B) and (C). Summary judgment procedure is favored and designed to secure the just, speedy, and inexpensive determination of every action. La. Code Civ.P. art. 966(A)(2).

STATUTORY EMPLOYER
The crux of the Claviers' argument is that the trial court applied the "integral relation" test in contravention of the supreme court's decision in Kirkland v. Riverwood International U.S.A. Inc., 95-1830 (La.9/13/96); 681 So.2d 329. Thus, the finding that Union Pacific was Shane's statutory employer pursuant to La. R.S. 23:1061 was in error.
In Thibodaux v. Sun Oil Co., 218 La. 453, 49 So.2d 852 (1950), the supreme court first pronounced the integral relation test for determining whether the work of the contractor was part of the principal's trade, business, or occupation. In Berry v. Holston Well Service, Inc., 488 So.2d 934, 937 (La.1986), the court discarded that test in favor of a "test ... more in line with the purpose of sections 1032 and 1061." This three-tier analysis for determinating whether the contract work was part of the principal's trade, business, or occupation was summarized in Kirkland, 681 So.2d at 334-35:
1. Is the contract work specialized? Specialized work is, as a matter of law, not a part of the principal's trade, business, or occupation, and the principal is not the statutory employer of the specialized contractor's employees.
2. Where the contract work is non-specialized, the court must compare the contract work with the principal's trade, business or occupation. At this second step, the court should make the following inquiries:
(i) Is the contract work routine and customary? That is, is it regular and predictable?
(ii) Does the principal have the equipment and personnel capable of performing the work? (iii)(sic) What is the practice of the industry? Do industry participants normally contract out this type of work or do they have *637 their own employees perform the work?
3. Was the principal engaged in the work at the time of the alleged accident?
Prior to 1989, La. R.S. 23:1061(A) provided:
Where any person (in this section referred to as the principal) undertakes to execute any work, which is a part of his trade, business, or occupation or which he had contracted to perform, and contracts with any person (in this section referred to as the contractor) for the execution by or under the contractor of the whole or any part of the work undertaken by the principal, the principal shall be liable to pay to any employee employed in the execution of the work or to his dependent, any compensation under this Chapter which he would have been liable to pay if the employee had been immediately employed by him....
Following the Berry decision, the legislature amended Section 1061(A) in 1989, by adding the following language:
The fact that work is specialized or nonspecialized, is extraordinary construction or simple maintenance, is work that is usually done by contract or by the principal's direct employee, or is routine or unpredictable, shall not prevent the work undertaken by the principal from being considered part of the principal's trade, business, or occupation, regardless of whether the principal has the equipment or manpower capable of performing the work.
In Kirkland, the court held that the amended language did not reinstate the integral relation test, but provided:
[T]hat the 1989 amendment was designed primarily to overrule the part of Berry dealing with specialization per se and to declare that a finding of specialization is not determinative of the absence of a statutory employment relationship. The 1989 amendment does not prohibit the court's considering the factors enumerated in Berry; the amendment merely proscribes making any one of the factors conclusive of the determination of whether the contract work was part of the principal's trade, business or occupation. In effect, we interpret the 1989 amendment as intended to overrule Berry, but not intended to overrule this court's decisions, in the ten years preceding Berry, that the court was to consider all pertinent factors under the totality of circumstances.
Id. at 336 (footnote omitted).
At the next legislative session following the supreme court's decision in Kirkland, the legislature once again amended La. R.S. 23:1061(A). It deleted the language added in the 1989 amendment and replaced it with, "For purposes of this Section, work shall be considered part of the principal's trade, business, or occupation if it is an integral part of or essential to the ability of the principal to generate that individual principal's goods, products, or services." Additionally, following the statute, the paragraph entitled "Legislative intent" states, "The provisions of this Act are intended to legislatively overrule the statutory employer tests as stated in the Louisiana Supreme Court decisions Berry v. Holston Well Service, 488 So.2d 934 (La.1986) and Kirkland v. Riverwood Intern. USA, Inc., 95-C-1839 (La.9/13/96); 681 So.2d 329." Since the 1997 amendment to La. R.S. 23:1061 became effective on June 17, 1997, and applies prospectively only, it does not apply in this instance because the accident at issue occurred prior to that date.
In granting summary judgment in favor of Union Pacific, the trial court held that Kirkland was an "erroneous pronouncement of Louisiana Law," and applied the integral relation test to find that the laydown services being performed by Garber were part of the trade, business, or occupation of Union Pacific in the exploration and production of oil and natural gas. Thus, it held that Union Pacific was Shane's statutory employer and, as such, it *638 was entitled to immunity from tort pursuant to La. R.S. 23:1061.
Although we agree with the trial court that the legislature's intent in 1989 was to overrule Berry and revert back to the integral relation test as propounded by Thibodaux, 218 La. 453, 49 So.2d 852, we feel constrained to follow the supreme court's decision in Kirkland. As a court of appeal, we are bound to follow the decisions of our supreme court. PPG Indus., Inc. v. Bean Dredging Corp., 419 So.2d 23 (La.App. 3 Cir.), writ granted, 422 So.2d 151 (La.1982), affirmed, 447 So.2d 1058 (La.1984). "In our judicial system the Court of Appeal, in its relation to the Supreme Court, occupies the status of an inferior court, therefore, we do not enjoy the prerogative individually or collectively of either criticizing or reversing a decision of that court, even if it should be obviously erroneous." Fouchaux v. Board of Comm'rs of Port of New Orleans, 65 So.2d 430, 432 (La.App.Orleans 1953). Since we are without authority to overrule the supreme court's decision in Kirkland, we are bound to reverse the trial court's judgment granting summary judgment and reconsider the motion in light of that decision.

RECONSIDERATION
In Kirkland, 681 So.2d at 336-37 (footnotes omitted), the supreme court laid out the test for determining whether a principal is the statutory employer of the worker:
We therefore hold that the appropriate standard under the amended Section 1061 for determining whether the contract work is part of the alleged principal's trade, business or occupation is for the court to consider all pertinent factors under the totality of the circumstances. The presence or absence of any one factor is not determinative, and the presence of one factor may compensate for the lack of another. Among those factors to be considered in determining whether a statutory employment relationship exists are the following:
(1) The nature of the business of the alleged principal;
(2) Whether the work was specialized or non-specialized;
(3) Whether the contract work was routine, customary, ordinary or usual.
(4) Whether the alleged principal customarily used his own employees to perform the work, or whether he contracted out all or most of such work;
(5) Whether the alleged principal had the equipment and personnel capable of performing the contract work;
(6) Whether those in similar businesses normally contract out this type of work or whether they have their own employees perform the work;
(7) Whether the direct employer of the claimant was an independent business enterprise who insured his own workers and included that cost in the contract; and
(8) Whether the principal was engaged in the contract work at the time of the incident.
Thus, the determination of whether the contract work was part of the principal's trade, business or occupation is a factual issue to be resolved on a case-by-case basis. Lewis v. Exxon Corp., 441 So.2d 192 (La.1983). Once the Legislature declared in 1989 that no single factor is determinative, the fact-based nature of the inquiry virtually necessitates a multi-factored, case-by-case factual inquiry under the totality of the circumstances. A totality of the circumstances inquiry is frequently difficult to accomplish on motion for summary judgment which requires a showing that there is no genuine issue of material fact that would defeat entitlement to judgment as a matter of law.
In support of its motion for summary judgment, Union Pacific introduced four exhibits into the record. The only exhibits pertaining to the statutory employer issue were two affidavits by Mark Kerr, an operation supervisor in Union Pacific's drilling *639 department. Kerr stated that Union Pacific explores and produces oil and gas and that it was the mineral lessee in a gas and mineral lease covering an area located in Sec. 30, T14S, R6W, Kings Bayou Field, Cameron Parish, Louisiana. He stated that Union Pacific was drilling the Welch # 1 well at this location, and that it contracted with Garber for laydown services, which were necessary to its oil and gas operations on the lease and were an integral part of its drilling operations at this location on August 18, 1996. He stated that Garber, either directly or through its affiliated company, Laydown Services, Inc., provided a laydown truck and crew to Union Pacific, of which Shane was an employee, and that he was injured while providing laydown services at the Welch # 1 well.
The Claviers introduced the affidavit of Frank H. Jones, who had been in the drilling business for over twenty-five years, had drilled over 200 wells, and owned four separate drilling rigs. He basically stated that laydown services are not an integral part of drilling oil or gas wells.
After reviewing the evidence, we find that there is insufficient factual information in the record to allow us to determine whether Union Pacific was Clavier's statutory employer on August 17, 1996. The only fact that we can discern from the record is that Union Pacific is in the business of exploring for and drilling for oil and gas. We know nothing about whether this type of work is specialized or non-specialized; routine, customary, ordinary, or usual; whether Union Pacific normally performs this type of work or contracts it out; whether it is capable of performing this work; whether similar businesses perform this work or contract it out; whether Garber was an independent business enterprise who insured its own workers and included this cost in its contract with Union Pacific; or whether Union Pacific was engaged in the contract work at the time of Shane's accident. Accordingly, we find that Union Pacific is not entitled to summary judgment on the issue of whether it was Shane's statutory employer.

CONCLUSION
For the foregoing reasons, the judgment of the trial court is reversed and the matter is remanded to the trial court for further proceedings. The costs of this appeal are to be held until the final outcome of this matter and then assessed with the other court costs as determined by the trial court.
REVERSED AND REMANDED.